[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 19, 2005
THOMAS  K. KAHN
CLERK

No. 04-16407
Non-Argument Calendar
_____

D.C. Docket No. 04-00362-CV-G-NE

MARVIN L. PRITCHARD,

Plaintiff-Appellant,

versus

JO ANNE B. BARNHART, Commissioner
of Social Security Administration,

Defendant-Appellee.

_____

Appeal from the United States District Court for the
Northern District of Alabama

_____

**(July 19, 2005)**

Before ANDERSON, BIRCH and MARCUS, Circuit Judges.

PER CURIAM:

Marvin Pritchard appeals the affirmance of the Commissioner of the Social

Security Administration's ("the Comissioner") denial of his application for Social

Security disability benefits. Because we conclude that the Administrative Law Judge ("ALJ") properly applied the Social Security Regulations, and the ALJ's decision was supported by substantial evidence, we **AFFIRM**.

## I. BACKGROUND

On 6 March 2001, Pritchard applied for a period of disability and disability insurance benefits on account of a back injury which allegedly disabled him as of 1 January 1999. Pritchard's application was denied, and he requested a hearing before an ALJ.

According to Pritchard's testimony before the ALJ, Pritchard worked as a salesman from 1981 to 1993. In this capacity, he worked on industrial sales displays and did customer service. In 1992, Pritchard injured his back while moving a display rack at work. After the injury, Pritchard continued working for approximately four months and received physical therapy. Pritchard ended his employment in 1993 because he could not handle the physical tasks at work as a result of his back pain and because he believed his employer was not treating him "in a manner that [he] . . . was due to be treated in." TR at 43.

In addition to the above-described job, Pritchard has worked as a self-employed sales representative since 1979. In this capacity, he sells and distributes silicone brake fluid to the Wal-Mart Distribution Center, cotton gloves to Goldkist

poultry, and vegetation killer, hand cleaners, and janitorial supplies to Coleman

Jefferson Gas Company. These customers are all located within approximately

five miles of Pritchard's residence. Pritchard's job responsibilities include

purchasing products, delivering products to customers, and scheduling product

shipments. According to the testimony of the vocational expert ("VE"),

Pritchard's work as self-employed salesperson is vocationally significant.

Pritchard has continued to work as a self-employed sales representative

since his injury. However, because of his chronic back pain, Pritchard works less

than twelve hours per week, and he believes he cannot handle additional business.

He has difficulty driving. Additionally, he cannot lift more than ten pounds, sit or

stand for longer than 30 minutes at a time, or walk for more than 15 to 20

minutes.[1]

Before the alleged onset of disability on 1 January 1999, Pritchard posted

earnings of $4,882.00 for 1995, $8,294.00 for 1996, $9,201.00 for 1997, and

$7,372.00 for 1998. After the alleged onset of disability, Pritchard posted

---

[1] Exhibits submitted to the ALJ provide a medical backdrop to Pritchard's testimony. According to the exhibits, Pritchard was diagnosed with a cervical disc degeneration at C5-6 with central protrusion in February 1994, and in October 1994, he was diagnosed with early degenerative disc disease at L5-S1. He subsequently received steroid epidural therapy on at least three occasions. By letter dated 8 January 1997, a doctor stated that Pritchard had a whole body impairment rating of 9%. In February of 2000, an MRI confirmed that Pritchard suffered from a degenerative disorder at L5-S1. By letter dated 17 October 2003, another doctor stated that Pritchard was unable to work because of "chronic, unrelenting back pain." TR at 469.

earnings of $4,738.67 for 1999, $7,990.94 for 2000, $7,025.00 for 2001, and $11,705.00 for 2002. Pritchard's income tax returns from 1999 to 2002 provide additional information about Pritchard's earnings from his work as a self-employed salesperson. For the 1999 calendar year, he reported $45,997.00 in gross sales from his business with a net profit of $4,399.00. For the 2000 calendar year, Pritchard reported $60,767.00 in gross sales with a net profit of $8,512.00. For the 2001 calendar year, he reported $50,592.00 in gross sales with a net profit of $7,606.00. For the 2002 calendar year, he reported $67,141.00 in gross sales or receipts and a net profit of $12,674.00. Pritchard testified that he had no other sources of income.

After reviewing the entire record, the ALJ noted that Pritchard's posted earnings in the year 2002 were greater than the average monthly allowance for presumed substantial activity. Additionally, the ALJ pointed out that Pritchard's earnings after his alleged onset disability date were comparable to his earnings before he allegedly became disabled. The ALJ concluded that the work performed by Pritchard as a self employed business owner/sales representative constituted substantial gainful activity because, within the meaning of the regulations, he rendered services that were "significant to the operation" of his business and received a "substantial income" from his business after the alleged disability onset

4

date.  The ALJ thus determined that Pritchard could not be found to be disabled as defined in the Social Security Act.

The Appeals Council denied Pritchard's request for review of the ALJ's decision.  Upon judicial review, the district court found that the ALJ correctly applied the regulations and affirmed the Commissioner's ruling.

## II.  DISCUSSION

On appeal, Pritchard argues that the ALJ erred by stopping at the "first step" of the sequential evaluation process dictated by 20 C.F.R. § 404.1520, after determining that Pritchard was performing substantial gainful activity, because the ALJ failed to take into consideration the full extent of Pritchard's medical condition.  Additionally, Pritchard contends that his earnings did not exceed the regulatory threshold so as to create a presumption that he engaged in substantial gainful activity for most of the period following his alleged disability onset date.

"We review the Commissioner's decision to determine if it is supported by substantial evidence and based on proper legal standards."  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal quotations and citations omitted).  Substantial evidence "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Id. (internal quotations and citations omitted).  Under this limited standard of review,

5

"we may not decide the facts anew [or] reweigh the evidence. . . . " Bloodsworth

v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal quotations and citations

omitted).

The Social Security Regulations establish a five step test under which to

determine whether a claimant is disabled. See 20 C.F.R. § 404.1520(a)(1). The

prongs of the test are sequential, and if a claimant is found to be not disabled at

any particular step, the Commissioner will make its determination without moving

on to the next step. Id. § 404.1520(a)(4). At the first step, the Commissioner

determines whether the claimant is engaged in substantial gainful activity. Id. §

404.1520(a)(4)(i). If a claimant is working and the work is deemed substantial

gainful activity, the Commissioner must find that the claimant is not disabled

regardless of his medical condition, age, education, or work experience. Id. §

404.1520(b).

20 C.F.R. § 404.1575 sets forth three tests to determine whether a self-

employed claimant has engaged in substantial gainful activity:

> (1) Test One: You have engaged in substantial gainful activity if you
> render services that are significant to the operation of the business
> and receive a substantial income from the business. . .

> (2) Test Two: You have engaged in substantial gainful activity if your
> activity, in terms of factors such as hours, skills, energy output,
> efficiency, duties, and responsibilities, is comparable to that of

6

> unimpaired individuals in your community who are in the same or
> similar businesses as their means of livelihood.
>
> (3) Test Three: You have engaged in substantial gainful activity if
> your work activity, although not comparable to that of unimpaired
> individuals, is clearly worth the amount shown in § 404.1574(b)(2)
> when considered in terms of its value to the business, or when
> compared to the salary that an owner would pay to an employee to do
> the work you are doing.

Id. § 404.1575(a)(1-3).

Under the first prong of Test One, if a claimant operates a business entirely by himself, any services that he renders are significant to the business. See id. § 404.1575(b)(1). Under the second prong of test one, self-employed income is evaluated by deducting normal business expenses from the claimant's gross income in order to determine the claimant's net income. This figure is then averaged and compared to the regulatory earnings threshold set forth in 20 C.F.R. § 404.1574(b)(2). See id. § 404.1575(c). If the claimant's income averages more than the regulatory threshold, the claimant will be deemed to have earned substantial income. Id. If, on the other hand, the claimant's income is less than the amounts described in § 404.1574(b)(2), the claimant's income will still be deemed substantial if it is comparable to what it was before the claimant became impaired. Id. § 404.1575(c)(2). Under 20 C.F.R. § 404.1574(b)(2), the regulatory threshold for establishing substantial gainful activity is over $500 from January

1990 to June 1999, over $700 from July 1999 to December 2000, and slightly higher for 2001 and 2002. See id. § 404.1574(b)(2).

After reviewing the record and the contentions of the parties in this case, we conclude that substantial evidence supports the Commissioner's determination that Pritchard is engaged in substantial gainful activity and is therefore not disabled. First, Pritchard rendered services that are significant to the operation of his business because he operates the business entirely by himself. See id. § 404.1575(b)(1). Pritchard has worked as a self-employed business/salesperson since 1979. His duties include taking orders, delivering products, and generally managing the business. He operates the business without help.

Second, substantial evidence supports the ALJ's determination, pursuant to 20 C.F.R. § 404.1575(a)(1), that Pritchard received a substantial income from his business. According to Pritchard's income tax returns, his average monthly income in 2000 was $709.33, which exceeds the $700 regulatory earning threshold for that year. In 2002, his average monthly income was $1056.17. This also exceeds the regulatory earnings threshold. Further, Pritchard's earnings records and income tax returns show that his income has remained relatively stable since 1997. Although his income was slightly less than the earnings threshold in 1999 and 2001, his post-disability income is thus comparable to his pre-disability

8

income, and his work as a self-employed salesperson during those years produced substantial income. See id. § 404.1575(c)(2). Accordingly, substantial evidence supports the ALJ's determination that Pritchard was engaged in substantial gainful activity in 1999, 2000, 2001, and 2002 and is therefore not disabled.

Pritchard's argument that the ALJ erred in stopping the first step of the five step analysis is also without merit. Section 404.1520 explicitly provides that if "we find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step." Id. § 404.1520(a)(4). In this case, the ALJ found at step one that Pritchard had engaged in substantial gainful activity and therefore was not disabled during the relevant period. Following the explicit command of the Regulations, the ALJ then properly terminated its evaluation at that point.

## III. CONCLUSION

Because we conclude that the ALJ properly applied the Social Security Regulations, and the ALJ's decision was supported by substantial evidence, we **AFFIRM**.